[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 352.]

The STATE EX REL. R.E.H. COMPANY, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. R.E.H. Co. v. Indus. Comm*., 1997-Ohio-382.]

*Workers' compensation—Violation of a specific safety requirement—Shake-out
machine which separates scraps of metal from sand not in compliance with
Ohio Adm.Code 4121:1-5-05(D)(1), when.*

(No. 94-2503—Submitted May 20, 1997—Decided August 6, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD09-1339.

_____

{¶ 1} In late 1988, appellee-claimant, Melvin K. Calhoun, was employed as a laborer for appellant R.E.H. Company. One of his duties involved operating a shake-out machine which separated scraps of metal from sand. The task required claimant to shovel a sand mixture onto the machine's bed. Once the machine started, sand and metal would be separated by a filtering screen, with the sand being vacuumed through a chute that deposited it in a pile adjacent to the machine.

{¶ 2} At the bottom of the twelve- to thirteen-inch chute was a blade, the function of which is not mentioned in the record.

{¶ 3} There were three ways to stop the machine. On/off buttons were located on the machine approximately nine inches from the chute. The operator could also unplug the machine from a wall outlet located nine to ten feet from the machine. Further, the machine could be disengaged by use of an on/off switch located at the wall receptacle. R.E.H. also suggests that the power cord could be directly disconnected from the machine, but this cannot be verified from the record.

{¶ 4} At some point, claimant allegedly began to have problems with the on/off buttons on the machine. As he stated in his affidavit:

"Every day for approximately 2 months prior to the accident, I had been having trouble with the start button for the machine. Most of the time it would not start when pushed by finger. I would have to use a pipe (metal bar) to hit and push the button in to get it to start. It appeared to have a short in the electrical system because sometimes it would start, sometimes it wouldn't start and on at least one occasion it started up on its own. About a week before the accident occurred I informed the maintenance man of the problem. He looked at the machine but could not immediately find the problem and he stated 'the machine is just old, try to make do with it and I'll look at it later.' "

{¶ 5} Claimant was performing his regular duties on December 19, 1988 when the machine, part way through its cycle, unexpectedly stopped. What followed is best described in claimant's own words:

"At the time the accident occurred[,] the machine suddenly stopped. I didn't know whether it had jammed up or just quit running. I pushed the off button. I had my right hand resting on top of the chute while looking at the machine and down the chute while trying to determine what the problem was. Suddenly, the machine jerked and started up on its own. My right hand was jerked around and accidentally entered the chute. That I was wearing work gloves—cuff type. That I am not sure whether my glove was caught and forced my hand in or not. My hand made contact with the blade of the machine at the bottom of the chute, resulting in the injury of record. After I was caught in the machine for a couple of seconds, the machine suddenly stopped and I was able to jerk my hand free. At the time I was caught by the blade I was approximately 1 1/2 feet away from the off & on buttons. However, I would not have been able to reach them anyway because I would have had to reach across the front of my body with my left hand."

{¶ 6} Appellee Industrial Commission of Ohio allowed claimant's workers' compensation claim for "post-traumatic stress disorder, interior subluxation at right shoulder, traumatic arthritis at right shoulder and rotator cuff, tear of right shoulder,

amputation right middle finger, amputation right index finger[,] right shoulder." Claimant then filed for additional compensation, alleging that his employer had violated several specific safety requirements ("VSSR"). A commission staff hearing officer, on June 22, 1992, made the following award:

"* * * [T]he claimant's injury was the result of the employer's failure to supply means within easy reach to disengage the machine from its power supply as required by OAC 4121:1-5-05(D)(1), the Code of Specific Requirements of the Industrial Commission relating to 'All Workshops and Factories.'

"* * *

"Employer has raised several defenses, in regard to the alleged violation of OAC 4121:1-5-05(D)(1). The defenses may be summarized on three points:

"First, it is alleged [that] the employer did comply with the requirement in two ways: the electrical plug and the on-off switch. An electrical plug 9 to 10 feet from the spot claimant was working when injured is expressly held to be not within easy reach of the operator. Based on the affidavit of claimant, it is found the on-off switch did not work reliably and that this inadequacy had been made known to the employer. Consequently, the defective on-off switch is held not to be a means to disengage the machine from its power supply.

"Second, employer argues [that] there is no proximate causal relationship between the violation and the injury for the reason [that] claimant's injury happened so quickly that his ability to turn the machine off after it re-started would be irrelevant. This argument assumes [that] the sole required function of a means to disengage from power is extraction from danger after it has commenced. Based on the affidavit of claimant, it is found [that] claimant did attempt to disengage the machine by hitting the off button before placing his hand into the machine. The ability of an employee to render a machine safely inoperative before putting himself into an area of danger is expressly found to be a function of the requirement that an

employer supply a means to disengage. Claimant's inability to protect himself prior to reaching into the danger zone is thus a proximate cause of his injury.

"Third, employer argues as a matter of credibility [that] the likeliest explanation of claimant's injury is that the machine became stuck, claimant reached into it without shutting it off and 'unstuck it.' Assuming (as it was not shown) [that] the machine would re-start if a[n] obstruction were removed, claimant's statements are found more credible primarily because [they were] given immediately after the incident, prior to obtaining counsel and most likely in ignorance of the legal implications."

**{¶ 7}** R.E.H.'s request for a rehearing was denied:

"The new evidence, the affidavit of Mr. Newman, was considered at this hearing. His affidavit is found to be primarily cumulative evidence. However, he does state [that] the power for the machine in question could also have been turned off by an on/off switch located on the wall about 9 feet from the machine. This then is similar to the electrical plug previously considered and is not found to meet the requirements of the code for the same reason stated in the June 22, 1992 order in regards to the electrical plug. In all other regards the order of June 22, 1992 is found [to be] correct and its findings and ruling are the findings and rulings of this order. For the reasons stated in the June 22, 1992 order a violation of [Ohio Adm.Code] 4121:1-5-05(D)(1) is found."

**{¶ 8}** R.E.H. filed a complaint in mandamus in the Court of Appeals for Franklin County, asserting that the commission abused its discretion in finding a VSSR. The court of appeals found that the order was backed by "some evidence" and denied the writ.

**{¶ 9}** This cause is now before this court on appeal as of right.

_____

*Kondritzer, Gold, Frank & Crowley Co., L.P.A.,* and *Lane N. Cohen,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Yolanda L. Barnes,* Assistant Attorney General, for appellees Industrial Commission of Ohio and Bureau of Workers' Compensation.

*E. S. Gallon & Associates* and *Richard M. Malone,* for appellee claimant.

———————————

***Per Curiam.***

{¶ **10**} At issue is a single specific safety requirement. Ohio Adm.Code 4121:1-5-05 provides:

"(D) Machinery control.

"(1) Disengaging from power supply.

"Means shall be provided at each machine, within easy reach of the operator, for disengaging it from its power supply. * * *"

{¶ **11**} The commission, in assessing a violation, made several findings. It found that the on/off switch on the machine was not an effective means of disengagement and had a known history of malfunction. It further found that the two remaining means of shutoff—the wall plug and the on/off switch at the wall receptacle—were not within claimant's easy reach. For the reasons to follow, we affirm the court of appeals' judgment.

{¶ **12**} R.E.H. appears to argue that the switch malfunction is irrelevant since the other methods of disengagement were available. That these two other means were nine to ten feet from claimant at the time that his hand was caught is also irrelevant according to R.E.H. R.E.H. argues that once the machine was started, claimant was free to move about the room. Therefore, claimant could have chosen to stand within easy reach of the wall plug and on/off switch at the wall. Because claimant chose not to position himself near these devices, R.E.H. contends that it cannot be held liable.

{¶ **13**} R.E.H.'s logic is convoluted. At its most abstract, R.E.H.'s position negates the need for any safety device. If the claimant was required to be nine to

ten feet from the machine while moving about the room, as R.E.H. advocates, there would be no hazard against which to protect. It is self-evident that, generally, a claimant cannot be injured by a machine if he is not in contact with it. More specifically, at the time the machine unexpectedly stopped, claimant had no choice but to be at the point of injury. Claimant could not have effectively determined the cause of the machine's stoppage from nine or ten feet away.

{¶ 14} The employer's argument also implies that claimant was negligent in not unplugging the machine or using the on/off switch at the wall before inserting his hand into the chute. This negligence, R.E.H. claims, bars a VSSR. This argument is unpersuasive. First, claimant should not be deemed negligent for failing to unplug the machine or use the wall on/off switch. Claimant had already activated the stop button on the machine and assumed that the power was off.

{¶ 15} Second, employee negligence, where it exists, does not necessarily foreclose a VSSR. A claimant's actions bar a VSSR only where the claimant deliberately renders an otherwise complying device noncompliant. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482. In this case, the machine, at the point of injury, was not in compliance with the specific safety requirement at issue. Claimant's actions here are, therefore, immaterial.

{¶ 16} The judgment of the court of appeals denying the writ is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

––––––––––––––––