[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 190.]

THE STATE EX REL. QUALITY TOWER SERVICE, INC., APPELLANT, *v.*

INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*,

2000-Ohio-296.]

*Workers' compensation—Alleged violation of specific safety requirement concerning suspension straps—Ohio Adm.Code 4121:1-3-08(G)—Writ of mandamus vacating Industrial Commission's award of violation of a specific safety requirement granted, when.*

(No. 98-1117—Submitted January 11, 2000—Decided March 15, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD04-523.

———————

{¶ 1} Quality Tower Service, Inc. ("QTS"), appellant, sought a writ of mandamus requiring appellee Industrial Commission of Ohio to vacate its order granting an award of additional workers' compensation to appellees Theresa Garaux, widow of John D. Garaux, and Richard D. Reed for QTS's violation of a specific safety requirement ("VSSR"). The Court of Appeals for Franklin County denied the writ, finding that the commission did not abuse its discretion in granting the VSSR award. QTS appeals as of right.

{¶ 2} Decedent Garaux was killed and Reed was severely injured while dismantling a two-to-three-hundred-foot communications tower for QTS. They were belted to a "gin pole," an antenna-like structure used to support tower technicians during the dismantling process, when the synthetic straps suspending the structure failed and caused the gin pole, Garaux, and Reed to fall thirty or forty feet to the ground. The straps failed because, contrary to the direct order of QTS president and general manager Mark A. Pyron, Garaux rigged the gin pole with

"ultralight straps" rather than the stronger straps that Pyron had provided for this purpose.

{¶ 3} After their workers' compensation claims were allowed, Reed and Garaux's widow alleged that QTS had violated, among other safety regulations, Ohio Adm.Code 4121:1-3-08(G). Reed claimed a violation of division (G)(2), which prohibits employers from exceeding the rated capacity of synthetic webbing. Garaux's widow claimed a violation of division (G)(2) and also of division (G)(1)(b), which requires certain employers to label synthetic web slings with the "[r]ated capabilities for the type of hitch."

{¶ 4} QTS conceded that inadequate suspension straps had caused Reed's injury and Garaux's death and that the straps were not properly labeled. But QTS also established that Garaux had used his own ultralight straps to rig the gin pole, that Pyron had expressly directed him to use the company's stronger straps and not the ultralight straps, and that QTS's straps were properly labeled. Thus, QTS argued that Garaux was unilaterally negligent, that his conduct had caused the accident and, therefore, that QTS had neither committed a VSSR nor caused the claimants' injuries.

{¶ 5} The commission found that QTS had violated Ohio Adm.Code 4121:1-3-08(G)(2) with respect to Reed because inadequate suspension straps had been used to rig the gin pole from which he fell. With respect to Garaux, the commission found a violation of Ohio Adm.Code 4121:1-3-08(G)(2) and (G)(1)(b) and that he was not unilaterally negligent. The commission reasoned that these provisions did not distinguish between whether equipment belonged to the company or an employee. Moreover, the commission inferred that if Garaux's ultralight straps had been properly labeled, he likely would not have used them, opting instead for the heavier-duty rigging provided by QTS.

**{¶ 6}** The court of appeals agreed with the commission, finding that QTS's failure to label Garaux's ultralight straps violated Ohio Adm.Code 4121:1-3-08(G)(1)(b) and (2) and caused the death and injuries at issue.

_____

*Gibson & Robbins-Penniman, J. Miles Gibson* and *Kelly A. Willis*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellee Industrial Commission of Ohio.

*Kegler, Brown, Hill & Ritter* and *Timothy T. Tullis*, for appellee Theresa Garaux.

*W. Michael Shay*, for appellee Richard D. Reed.

_____

***Per Curiam.***

**{¶ 7}** The dispositive issue in this case is: Did QTS comply with Ohio Adm.Code 4121:1-3-08(G) so that it is not responsible for the alleged VSSRs? For the following reasons, we hold that QTS did comply with this specific safety regulation and that Garaux unilaterally violated the rule. Accordingly, we reverse the court of appeals' judgment and grant the requested writ of mandamus.

**{¶ 8}** QTS contends that it complied with Ohio Adm.Code 4121:1-03-08(G) because it provided Garaux and Reed "properly marked equipment more than suitable for the job," Pyron told Garaux on site to use the company's equipment and not his own, and Garaux ignored the instruction. We agree.

**{¶ 9}** This case is an example of what has become known as "unilateral negligence," a defense to VSSR liability that has been described as applying "only where the claimant *deliberately* renders an otherwise complying device noncompliant [*sic*, nonconforming]." (Emphasis added.) *State ex rel. R.E.H. Co. v. Indus. Comm.* (1997), 79 Ohio St.3d 352, 355, 681 N.E.2d 928, 931; *State ex rel. Martin Painting & Coating Co. v. Indus. Comm.* (1997), 78 Ohio St.3d 333, 339,

678 N.E.2d 206, 211; *State ex rel. Pressware Internatl., Inc. v. Indus. Comm.* (1999), 85 Ohio St.3d 284, 288, 707 N.E.2d 935, 939; *State ex rel. Hirschvogel, Inc. v. Miller* (1999), 86 Ohio St.3d 215, 218, 714 N.E.2d 386, 388. Unilateral negligence derives from *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482, in which an employer was exonerated from VSSR liability because an employee had removed a part of a scaffold that had been required by a specific safety requirement. *Brown* held that (1) employers can be subject to VSSR penalties for "only those acts within the employer's control," and (2) a specific safety requirement does not impose a duty of "constant surveillance" just by requiring a securely and rigidly based scaffold. *Id.* at 164, 524 N.E.2d at 485.

{¶ 10} QTS relies principally on *Brown*, whereas the other parties rely mainly on *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 544 N.E.2d 887. In *Cotterman,* an employer was held liable for violating a regulation requiring sufficient chain-sling capacity for suspending overhead loads. There, a supervisory employee was killed because he selected chains too weak to suspend a huge core. Contrasting *Brown*, the *Cotterman* court held, in effect, that this specific safety requirement imposed an absolute duty of compliance notwithstanding the supervisory employee's mistake.

{¶ 11} *Brown* and *Cotterman* are regularly cited for establishing the boundaries of the unilateral negligence defense, *Pressware* at 288, 707 N.E.2d at 939; *Martin Painting* at 339, 678 N.E.2d at 211; *State ex rel. Northern Petrochemical Co., Nortech Div. v. Indus. Comm.* (1991), 61 Ohio St.3d 453, 455, 575 N.E.2d 200, 201-202; however, the defense is not actually about an employee's *negligence*. The employer instead avoids VSSR liability when "[the] employee unilaterally *violates* a safety requirement [emphasis added]," *Cotterman* at 47, 544 N.E.2d at 892; *Pressware* at 288, 707 N.E.2d at 939, that is, when the *employee* removes or ignores equipment or instruction that complies with a specific safety

requirement. *Brown* at 164, 524 N.E.2d at 485; *Northern Petrochemical*. On the other hand, an employee's negligence in failing to protect himself from injury due to an employer's VSSR will never bar recovery because specific safety requirements exist to promote a safe work environment *and* "to protect employees against their own negligence and folly." *Cotterman* and *Pressware*. Thus, the critical issue in a VSSR claim is always whether the *employer* complied with the specific safety requirement. *Id.*

{¶ 12} Here, it is undisputed that QTS properly labeled and made available synthetic web straps adequate to hoist Garaux, Reed, and the gin pole. This is all that Ohio Adm.Code 4121:1-3-08(G) required.[1] Thus, QTS complied with this rule and did not commit a VSSR.

{¶ 13} Moreover, while appellees offer *Cotterman* as authority for holding QTS responsible for this tragic accident, the absolute duty of compliance recognized in *Cotterman* is too strict and has not been enforced for this reason. For example, in *Northern Petrochemical Co.,* we found no VSSR liability when an employee died after falling out of an unsecured lift cage. Since the operating employees had been trained and warned to check that the cage was securely attached to a forklift mechanism, and the accident resulted purely from employee carelessness in failing to adequately inspect, we did not penalize the employer for the employee's conduct.

{¶ 14} Similarly, in *State ex rel. Mayle v. Indus. Comm.* (1999), 86 Ohio St.3d 74, 711 N.E.2d 687, we found no VSSR liability when an employee died after falling off an electrical tower. Again, the employer complied with the specific

---

1. Ohio Adm.Code 4123:1-3-08(G) provides only that:
   "Synthetic webbing (nylon, polyester and polypropylene)
   "(1) The employer shall have each synthetic web sling marked or coded to show
   "(a) Name or trademark of manufacturer.
   "(b) Rated capacities for the type of hitch.
   "(c) Type of material.
   "(2) Rated capacity shall not be exceeded."

safety requirement by supplying safety belts for the employee's use; the employee just never wore them. Thus again, we refused to penalize the complying employer for the employee's mistake.

**{¶ 15}** QTS did everything that could reasonably be expected to comply with Ohio Adm.Code 4121:1-3-08(G). Pyron provided sufficient equipment and directly ordered Garaux to use it. Pyron did not have to rig the gin pole himself or check Garaux's work to make sure that Garaux had followed his instructions. *Brown.* In view of this compliance, QTS's actions did not constitute a VSSR or cause Garaux's death and Reed's injury.

**{¶ 16}** The court of appeals' judgment, therefore, is reversed, and a writ of mandamus is granted to vacate the commission's VSSR award.

*Judgment reversed*

*and writ granted.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

––––––––––––––––––

**ALICE ROBIE RESNICK, J., dissenting**.

**{¶ 17}** I would affirm the judgment of the court of appeals.

DOUGLAS and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

––––––––––––––––––