THE STATE EX REL. RICHMOND, APPELLANT, *v.* INDUSTRIAL
COMMISSION ET AL., APPELLEES.

[Cite as *State ex rel. Richmond v. Indus. Comm.,* 139 Ohio St.3d 157,
2014-Ohio-1604.]

*Workers' compensation—Violation of specific safety requirement—Ohio Adm.Code 4123:1-3-03(J)(1)—Hook ladders—Industrial Commission did not abuse discretion in considering evidence of industry standards in determining whether employer complied with safety requirement—Hook ladder, when properly secured, can be part of billboard structure— Commission may consider claimant's negligence in deciding to deny award.*

(No. 2012-1786—Submitted February 4, 2014—Decided April 17, 2014.)

APPEAL from the Court of Appeals for Franklin County, No. 11AP-771,
2012-Ohio-4412.

_____

**Per Curiam.**

{¶ 1} We affirm the court of appeals in this challenge to the denial of an additional award for violation of a specific safety requirement ("VSSR"). The appellant, Darrin C. Richmond, alleged that his employer, appellee Lamar Advertising of Youngstown, Inc. ("Lamar"), violated Ohio Adm.Code 4123:1-3-03(J)(1), resulting in his injury. The Industrial Commission, also an appellee, denied the award, and Richmond filed an action in mandamus in the Tenth District Court of Appeals. The magistrate of that court and the three-judge panel found that Richmond had not established by a preponderance of the evidence that the commission had abused its discretion in denying the award.

**{¶ 2}** We hold that the commission did not abuse its discretion in (1) considering evidence of industry standards in determining whether Lamar complied with the safety requirement, (2) concluding that a hook ladder, when properly secured, can be part of a billboard structure, and (3) considering Richmond's negligence in deciding to deny a VSSR award.

**{¶ 3}** We affirm.

*Facts and procedural posture*

**{¶ 4}** Richmond was injured when he fell from a ladder as he was working on a billboard in the course and scope of his employment with Lamar. His claim was allowed for various physical and psychological conditions. In addition to his workers' compensation benefits, Richmond sought an additional VSSR award. Before the Industrial Commission, Richmond alleged that Lamar had violated several safety rules associated with workshops and factories and the construction industry.

**{¶ 5}** The commission staff hearing officer ("SHO") considered a report from the Safety Violations Investigation Unit of the Bureau of Workers' Compensation and testimony from Richmond and his supervisor, Brian Conley. Conley testified that the ladder issued to Richmond was standard for the industry and for Lamar. It was a 14-foot straight ladder with a double hook at the top. The ladder issued to Richmond had been purchased in 2006 and upon examination after the accident, was found to be in good condition.

**{¶ 6}** Lamar issued fall-protection equipment to its employees, consisting of a safety harness and double lanyard. The safety harness wraps around the worker's body, and the lanyard attaches the safety harness to a structure or safety cable.

**{¶ 7}** To prevent falls, employees use a double lanyard and are required to be "tied off" on one of the lanyards at all times. A catwalk that spans the bottom of the billboard has a fixed cable along its base. Employees are trained to

attach one lanyard to this cable when working from the catwalk or when moving the ladder. Before ascending a ladder, they first make sure that the ladder is securely fixed and then attach one lanyard to a tie-off point on the ladder before releasing the other from the catwalk.

{¶ 8} Billboards are equipped with ladder stops at each end to prevent the hook ladder from slipping off the side of the billboard. Employees are required to inspect the billboard before beginning work to ascertain whether the ladder stops are in place. Employees are instructed to stop work and call the office if there are any safety issues.

{¶ 9} Richmond's affidavit states that on the day of the accident, he secured the ladder and attached the lanyard to the tie-off point on the ladder, but the ladder slipped off the billboard and dragged him off with it. However, when the employer found the ladder after the accident, the lanyard was hooked to a rung on the ladder, not to the ladder's tie-off point. Richmond initially asserted that there were no ladder stops on the billboard that day. However, when the employer inspected the billboard immediately after the accident, it found the ladder stops in place and intact. Richmond eventually admitted that he could not be certain that the stops were not in place, and he now concedes that he mistakenly placed the ladder between the stop and the billboard's edge instead of between the stops.

{¶ 10} Richmond's supervisor testified that the hook ladder was standard for the outdoor-advertising industry. He explained that when engaged properly, the ladder is considered part of the billboard structure and that OSHA regulations expressly adopt that view. He also testified that the ladder stops are there to prevent the ladder from slipping off the edge of the billboard.

{¶ 11} The SHO denied Richmond's VSSR claim. First, the SHO found that two of the regulations cited by Richmond apply only to factories and workshops, rather than outdoor billboards, and therefore could not support a VSSR. The SHO found other regulations to be "merely definitional" and

therefore also did not support a VSSR. Finally, the SHO considered the specific safety requirement cited by Richmond as supporting the remaining claim, Ohio Adm.Code 4123:1-3-03(J)(1). That regulation requires that safety harnesses and lanyards be provided to employees by the employer, that it is the responsibility of the employee to wear them when working more than six feet off the ground, and that the lifeline and safety belt or harness be "securely fastened to *the structure.*" (Emphasis added.)

{¶ 12} After reviewing the evidence, including evidence of industry standards, the SHO found that when the Werner hook ladder used in this case is secured to the billboard structure properly, it becomes part of the structure. Therefore, attaching the lanyard and harness securely to the ladder rather than to the billboard satisfies the requirement that they be secured to "the structure." The SHO concluded that the employer satisfied all elements of the regulation at issue and that Richmond had not established by a preponderance of the evidence that any of the alleged safety requirements had been violated. The SHO noted Richmond's testimony that he did not check the ladder stops to make sure they were in place.

{¶ 13} Richmond filed this mandamus action in the Tenth District Court of Appeals, requesting that the commission be ordered to grant him the VSSR award he seeks. Among his arguments was that the SHO improperly relied on evidence that the manner in which the ladder was used was acceptable as the industry standard by an OSHA regulation.

{¶ 14} The court's magistrate found that Lamar had not violated a safety requirement. Specifically, she found no abuse of discretion in the SHO's findings that Lamar provided lifelines and harnesses that when properly engaged, were securely fastened to the structure, and that when the hooks were properly placed over the top of the billboard and the ladder was within the stops, the ladder was part of the structure. The magistrate also found no error in the SHO's

consideration whether the use of the ladder satisfied OSHA standards. The magistrate ultimately decided that Richmond had not demonstrated that the commission abused its discretion in failing to grant him the VSSR award.

{¶ 15} Richmond filed five objections to the magistrate's report, and the Tenth District panel overruled all five. Lamar filed a single objection regarding a minor mistake in the magistrate's summary of the SHO's order, to which Richmond did not respond. The Tenth District sustained that objection but otherwise adopted the magistrate's decision.

{¶ 16} Richmond appealed to this court.

*Analysis*

{¶ 17} To establish entitlement to a VSSR award, a claimant must show that a specific safety requirement ("SSR") is applicable to the employer, that the employer violated that SSR, and that the violation proximately caused the injury. *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, 781 N.E.2d 170, ¶ 46. The interpretation of SSRs rests with the commission. *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193, 194, 448 N.E.2d 134 (1983); *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172, 545 N.E.2d 1216 (1989). But because a VSSR award is a penalty, all reasonable doubts concerning its interpretation must be resolved in favor of the employer. *Id.*

{¶ 18} Richmond presents three propositions of law in his appeal. He proposes that the Industrial Commission abused its discretion in relying on a federal OSHA rule exemption as the basis for denying the VSSR award. He proposes that the commission's finding that a portable hook ladder is part of a "structure" for purposes of the safety requirement is illogical and negates its purpose. And he proposes that the commission's decision denying the VSSR award based on Richmond's negligence is contrary to law. For the reasons explained below, Richmond's propositions are not well taken, and we affirm.

**The Industrial Commission does not improperly adopt another agency's rules merely by considering industry standards or another administrative agency's treatment of the same industry or equipment**

{¶ 19} To obtain a VSSR award, a claimant must demonstrate that the employer violated one of the "specific and definite requirements or standards of conduct as are prescribed by statute or by orders of the Industrial Commission." *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 291 N.E.2d 748 (1972), paragraph one of the syllabus. Violations of other regulations, such as OSHA's, will not, by themselves, support a VSSR claim. *State ex rel. Roberts v. Indus. Comm.*, 10 Ohio St.3d 1, 2-3, 460 N.E.2d 251 (1984). Conversely, compliance with OSHA regulations, by itself, does not mandate a denial of a VSSR claim. *State ex rel. Danstar Builders, Inc. v. Indus. Comm.*, 10th Dist. Franklin No. 04AP-309, 2005-Ohio-365, ¶ 26, *aff'd*, 108 Ohio St.3d 315, 2006-Ohio-1060, 843 N.E.2d 761.

{¶ 20} The SHO order in this case did not expressly cite any regulation other than the Ohio SSRs. But Richmond argues that the SHO's conclusion is based solely on a concept borrowed entirely from OSHA, which apparently permits the billboard industry to use a hook ladder as the attachment point for the harness and lanyard rather than the billboard structure itself. By referring to the ladder in this case as being the "industry standard," Richmond contends, the SHO was betraying an improper reliance on a federal concept not found in the Ohio SSR. Richmond further contends that this reliance was expressly confirmed by the magistrate, who stated that it was not an abuse of discretion for the SHO "to utilize evidence that the employer's actions have been deemed to meet the requirements of other codes such as OSHA," given the fact that "there are no administrative code provisions which apply to billboards or the outdoor advertising industry." Richmond counters that the Ohio code does in fact apply to

billboards and outdoor advertising, which he claims further undermines any reliance on other codes.

**{¶ 21}** Employers cannot be liable for a VSSR unless the requirement they are found to have violated was enacted either by the General Assembly or by an order of the commission. *Roberts,* 10 Ohio St.3d at 3, 460 N.E.2d 251. Sources such as manufacturer's instructions and industry standards may not form the basis of an award unless they are expressly incorporated into the SSR. *State ex rel. G & S Metal Prods., Inc. v. Moore*, 79 Ohio St.3d 471, 475-476, 683 N.E.2d 1135 (1997). However, the *G & S Metal* court also held that manufacturer specifications may be relevant in evaluating whether an employer violated an SSR. *Id.* at 477 ("VSSR liability may lie when failure to comply with manufacturer instructions frustrates the equipment's ability to perform its essential safety function"). For example, in *State ex rel. Martin Painting & Coating Co. v. Indus. Comm*., 78 Ohio St.3d 333, 678 N.E.2d 206 (1997), the court found that the commission had not abused its discretion in finding that the employer had violated an SSR by not providing sufficient counterweights to support the required maximum load on a scaffold. The employer argued that the SSRs did not mention counterweights, and therefore the SSR could not have been violated. We held that the SSR did require that the scaffold support four times the maximum rated load, and according to the manufacturer's specifications, counterweights must be used for that purpose. Thus, the SSR could not be satisfied without counterweights. *Id.* at 338-339.

**{¶ 22}** In short, although the commission may not adopt external standards as the sole basis for a VSSR award, it may look to those standards as relevant factors to inform its interpretation of an SSR and its determination whether the employer violated that SSR.

**{¶ 23}** Here, the SSR at issue, Ohio Adm.Code 4123:1-3-03(J), concerns fall-protection equipment, such as lifelines, lanyards, and safety harnesses:

7

> (1) Lifelines, safety belts or harnesses and lanyards shall be provided by the employer, and it shall be the responsibility of the employee to wear such equipment when exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform, except as otherwise specified in this chapter, and when required to work on stored material in silos, hoppers, tanks, and similar storage areas. Lifelines and safety belts or harnesses *shall be securely fastened to the structure* and shall sustain a static load of no less than three thousand pounds.

(Emphasis added.) The regulation also states that it "shall be the responsibility of the employee to properly use the equipment provided." Ohio Adm.Code 4123:1-3-03(N).

{¶ 24} The critical phrase in this case is "the structure." The SSR requires that the harnesses and lanyards be "securely fastened to the structure." The commission's SHO, when determining whether Lamar had violated the SSR, relied on the testimony of both Richmond and Conley to find that Richmond was using a hook ladder supplied by Lamar. Conley testified that the Werner brand ladder was accepted as the industry standard because, once secured, it could not fall. He further testified that an OSHA exemption provided that these ladders, properly secured, are considered part of the structure.

{¶ 25} We cannot say that the SHO unlawfully engrafted an OSHA regulation onto Ohio Adm.Code 4123:1-3-03(J)(1) to deny the VSSR award. The SHO did not cite or expressly rely on the OSHA reference from the testimony. The SHO looked to Conley's testimony about the "industry standard" as a relevant factor in interpreting the SSR, as an aid to understanding the term

"structure" in the context of the case. We find no abuse of discretion in consulting industry standards to interpret an SSR, as long as those standards are not the sole basis for determining whether an employer complied with the SSR. And there is no indication in the SHO's order that the VSSR award was denied based on the OSHA exemption, which, as we have said, was not even mentioned. Rather, the "industry standard" evidence was relied upon to inform the SHO's interpretation of the SSR. As always, we defer to the commission's expertise in its construction of the safety code unless that construction is shown to be an abuse of discretion. *State ex rel. Taylor v. Indus. Comm.,* 70 Ohio St.3d 445, 449, 639 N.E.2d 101 (1994).

{¶ 26} Richmond's first proposition is without merit.

### The commission may find that a hook ladder that is properly secured to a structure is, at least temporarily, a part of the structure for purposes of the safety requirements

{¶ 27} The commission did not abuse its discretion when it found that when a hook ladder is properly secured to a structure, it is part of that structure and may serve as an anchor point for an employee's fall-protection equipment.

{¶ 28} The words of an administrative rule are given their plain and ordinary meaning. *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54, 386 N.E.2d 1107 (1979). Courts will defer to an agency's interpretation of its own rule, as long as it is reasonable. *Frisch's Restaurants, Inc. v. Ryan*, 121 Ohio St.3d 18, 2009-Ohio-2, 901 N.E.2d 777, ¶ 16.

{¶ 29} Here, the commission, through its SHO, heard testimony that the Werner hook ladder cannot fall when it is properly secured by the hooks at the top and with the ladder stops in place. This testimony is "some evidence" that the ladder, when secured properly on the billboard and inside the stops, becomes sufficiently fixed to be considered a part of the structure for purposes of preventing falls. As Richmond was given a Werner hook ladder in good

condition and was trained in how to secure it on the billboard, the commission was within its discretion to find that the ladder was, for all practical purposes, a part of the structure under the SSR.

{¶ 30} Richmond's second proposition is without merit.

### The commission may find that an employee's unilateral negligence precludes an award for violation of specific safety requirements

{¶ 31} An employee's negligence will bar a VSSR award if the employer complied with the SSR but the compliance was nullified by the employee's conduct. *State ex rel. Coffman v. Indus. Comm.*, 109 Ohio St.3d 298, 2006-Ohio-2421, 847 N.E.2d 427, ¶ 13, citing *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162, 164, 524 N.E.2d 482 (1988) (a VSSR award is precluded by the claimant's unilateral negligence in removing the top cross brace from a scaffold's supporting structure without first installing a corresponding cross brace beneath, contrary to employer instructions). *See also State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 192, 724 N.E.2d 778 (2000), quoting *Frank Brown & Sons* at 164 (employers can be subject to VSSR penalties for " 'only those acts within the employer's control' ").

{¶ 32} The case cited by Richmond is inapposite. As Richmond correctly quotes, "unless a claimant deliberately circumvented an otherwise complying safety device, or refused to use employer-provided safety equipment, an employee's conduct is not relevant to a VSSR determination." *State ex rel. Pressware Internatl., Inc. v. Indus. Comm.*, 85 Ohio St.3d 284, 288, 707 N.E.2d 935 (1999).

{¶ 33} However, the facts here are different from those in *Pressware*. In that case, the SSR required employers to provide hand tools to clear jammed materials from certain presses. The claimant, operating the press, noticed a jam and stopped the machine to clear it. Unaware that the safety switch that protected her from an accidental cycling of the machine had been improperly adjusted that

morning, the claimant reached into the cutting area to clear away the stuck materials. The machine cycled, injuring her. The employer argued that she was negligent in sticking her hand into the cutting area. This argument was rejected, because the employer had failed to provide a clearing tool, and therefore the employee's negligence was irrelevant.

{¶ 34} Here, Lamar provided the safety equipment required by Ohio Adm.Code 4123:1-3-03(J). Richmond conceded that he did not look for the ladder stops and that he knew that the stops prevent the Werner ladder from slipping off the side of the billboard. He admits in his brief that he "made the mistake of placing his ladder between the end stop and billboard edge."

{¶ 35} Thus, Richmond's negligence in not using the ladder properly caused the accident. Lamar's equipment was in compliance, and Richmond had been trained how to use all the equipment properly. "[T]he critical issue in a VSSR claim is always whether *the employer* complied with the specific safety requirement." (Emphasis sic.) *State ex rel. Quality Tower Serv.,* 88 Ohio St.3d at 193, 724 N.E.2d 778. Here, as established above, Lamar complied with the requirement, and therefore its actions do not constitute a VSSR.

{¶ 36} Richmond's third proposition is without merit.

*Conclusion*

{¶ 37} The commission properly considered evidence of the industry standards in determining whether Lamar's ladder and harness equipment complied with the law. The commission correctly concluded that when properly secured, the Werner hook ladder used here is part of the billboard structure. Finally, the commission properly considered Richmond's negligence in deciding whether to make a VSSR award, because Lamar complied with the SSR at issue here. In short, Richmond failed to show a clear legal right to the requested relief. We therefore affirm.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Boyd, Rummell, Carach, Curry, Kaufmann & Bins-Castronovo Co., L.P.A., and Walter Kaufmann, for appellant.

Cohen, Todd, Kite & Stanford, L.L.C., and Jill T. O'Shea, for appellee Lamar Advertising of Youngstown, Inc.

Michael DeWine, Attorney General, and Colleen C. Erdman, Assistant Attorney General, for appellee Industrial Commission.

_____