[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. 31, Inc. v. Indus. Comm.,* Slip Opinion No. 2017-Ohio-9112.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-9112

THE STATE EX REL. 31, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. 31, Inc. v. Indus. Comm.,* Slip Opinion No. 2017-Ohio-9112.]**

*Workers' compensation—Violation of a specific safety requirement ("VSSR")—Ohio Adm.Code 4123:1-5-11(D)(10)'s nip-point rule does not apply to a calender machine that is expressly covered by Ohio Adm.Code 4123:1-13-03—Writ of mandamus granted ordering Industrial Commission to vacate VSSR award based on violation of nip-point rule.*

(No. 2016-0968—Submitted July 11, 2017—Decided December 21, 2017.)

APPEAL from the Court of Appeals for Franklin County, No. 14AP-925, 2016-Ohio-3526.

_____

**Per Curiam.**

{¶ 1} This is an appeal in a mandamus case in which appellant, 31, Inc. ("31"), challenges the order of appellee Industrial Commission granting an additional award for the violation of a specific safety requirement ("VSSR"). The commission determined that 31 had violated the "nip point" rule found in Ohio Adm.Code 4123:1-5-11(D)(10)(a), thereby causing an industrial injury to appellee Duane Ashworth.[1]

{¶ 2} The Tenth District Court of Appeals denied the request for a writ, concluding that the commission did not abuse its discretion.

{¶ 3} We hold that the nip-point rule did not apply here because an administrative-code provision applicable to the rubber and plastics industry expressly covered the machine that Ashworth was operating. Therefore, we reverse the judgment of the court of appeals and issue a writ of mandamus ordering the commission to issue a new order that denies Ashworth's application for a VSSR award.

**Facts and Procedural History**

{¶ 4} 31 processes rubber to make products that are used to repair tires. Ashworth was employed by 31 as a calender operator. A calender is defined as "a machine equipped with two or more metal rolls revolving in opposite directions and used for continuously sheeting or plying up rubber or plastic compounds and for frictioning or coating fabric with rubber or plastic compounds." Ohio Adm.Code 4123:1-13-01(B)(3).

{¶ 5} Ashworth operated a calender with three rolls. A coworker would insert a ball of rubber between the top and middle rolls on one side of the calender, and as it came out of the opposite side, Ashworth's job was to grab the rubber with

---

[1] A nip point is the point at which it is possible to be caught between moving parts of a machine or between material and the moving part of a machine. Ohio Adm.Code 4123:1-5-01(B)(94).

both hands and peel it off the bottom roll into a tank containing a chemical solution to cool it.

{¶ 6} On the day of the accident, as Ashworth grabbed the rubber to pull it off the roll, it caught the fingers on his right hand and pulled his hand into a three-inch space between the rolls. When he was unable to remove his hand, he pulled an emergency cable that immediately stopped the rolls.

{¶ 7} Ashworth filed a workers' compensation claim that was allowed for multiple injuries to his hand. He also applied for an additional award for a VSSR, alleging that 31 had violated Ohio Adm.Code 4123:1-5-11(D)(10)(a), a workshop- and factory-safety rule.

{¶ 8} Ohio Adm.Code 4123:1-5-11(D)(10) provides:

Nip points.

(a) Means shall be provided to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface.

(b) Exception.

Machinery covered expressly by requirements contained in other codes of specific requirements of the Ohio bureau of workers' compensation.

{¶ 9} 31 argued that the exception in Ohio Adm.Code 4123:1-5-11(D)(10)(b) applied because the calender was expressly covered by Ohio Adm.Code 4123:1-13-03, a rule that provides specific safety guidelines for calenders used in the rubber and plastics industry. A hearing officer rejected this argument, finding that both Ohio Adm.Code 4123:1-13-03 *and* 4123:1-5-11(D)(10)(a) applied to the calender, citing *State ex rel. Hartco, Inc., Custom*

*Coated Prods. v. Indus. Comm.*, 38 Ohio St.3d 181, 527 N.E.2d 815 (1988), in which this court held that Ohio Adm.Code 4123:1-5-11(D)(10)(a) applied to a reroll machine used in the rubber and plastics industry.

{¶ 10} The staff hearing officer nevertheless denied Ashworth's VSSR application, concluding that "the nip point guarding provisions were not practical on the calender machine" and that the machine was equipped with alternative means of protection, such as extra safety lines and emergency-stop cords as required for the rubber industry.

{¶ 11} Ashworth moved for a rehearing. A staff hearing officer granted the motion.

{¶ 12} On rehearing, a staff hearing officer concluded that Ohio Adm.Code 4123:1-5-11(D)(10)(a) applied and granted the VSSR application. The hearing officer rejected 31's argument that the exception in Ohio Adm.Code 4123:1-5-11(D)(10)(b) applied, finding that the administrative rules for the rubber industry supplement—but do not supplant—the workshop and factory rules, citing *Hartco*.

{¶ 13} 31 filed a complaint for a writ of mandamus, alleging that both the decision to grant a rehearing and the decision to order a VSSR award were contrary to law and not supported by some evidence, *see State ex rel. McKee v. Union Metal Corp.*, 150 Ohio St.3d 223, 2017-Ohio-5541, 80 N.E.3d 491, ¶ 11 (the commission abuses its discretion if it enters an order that is not supported by "some evidence").

{¶ 14} The court of appeals concluded that the commission did not abuse its discretion when granting the rehearing motion or the VSSR award. The court determined that *Hartco*, which interpreted the same Administrative Code provisions at issue here, held that the rules for the rubber and plastic industries supplement but do not supplant the rules for workshops and factories. The court of appeals denied the writ. 2016-Ohio-3526, ¶ 7-8.

{¶ 15} The direct appeal filed by 31 is now before the court.

**Legal Analysis**

**{¶ 16}** At the outset, we deny 31's request for oral argument. Granting oral argument in a direct appeal is subject to the court's discretion. S.Ct.Prac.R. 17.02(A). The case does not present an issue that necessitates oral argument, and the parties' briefs are sufficient to resolve the issues raised. *See State ex rel. Woods v. Oak Hill Community Med. Ctr.*, 91 Ohio St.3d 459, 460, 746 N.E.2d 1108 (2001).

**{¶ 17}** 31's argument that the commission's decision to grant a rehearing was an abuse of its discretion is resolved by our analysis of the merits of the VSSR claim. Regarding the VSSR, 31 argues that the rule in Ohio Adm.Code 4123:1-5-11(D)(10)(a) relating to "nip points" does not apply to calenders because of the exception in Ohio Adm.Code 4123:1-5-11(D)(10)(b) for "machinery covered expressly by requirements contained in other codes of specific requirements of the Ohio bureau of workers' compensation."

**{¶ 18}** 31 maintains that there are express safety requirements for calender machines in Ohio Adm.Code 4123:1-13-03, which is within the chapter that applies to the rubber industry. That rule requires employers to protect employees either by providing safety trip cords that immediately stop the calender's rolls when the cord is pushed or pulled, Ohio Adm.Code 4123:1-13-03(A), or by locating the calender where employees cannot come into contact with the roll bites, Ohio Adm.Code 4123:1-13-03(B). 31 argues that because this rule expressly covers calenders, the exception in Ohio Adm.Code 4123:1-5-11(D)(10)(b) applies.

**{¶ 19}** We agree. Ohio Adm.Code 4123:1-13-03 expressly establishes safety controls for calenders. For the commission to require 31 to comply with the nip-point rule, it must ignore the rule that expressly covers the safety controls for calender machines. While we defer to the commission's *reasonable* interpretation of its own rules, *State ex rel. Richmond v. Indus. Comm.*, 139 Ohio St.3d 157, 2014-Ohio-1604, 10 N.E.3d 683, ¶ 28, we find that the commission's failure to apply the

rule that expressly covers calender machines was not reasonable, and thus an abuse of its discretion.

{¶ 20} Furthermore, the court of appeals' reliance on *Hartco* is misplaced because that case is factually distinguishable. *Hartco* involved a reroll machine used in the rubber industry. The injured worker alleged that the employer failed to guard the nip point on the reroll machine in violation of former Ohio Adm.Code 4121:1-5-11(D)(10)(a).[2] The *Hartco* court concluded that because no *specific rules* within the chapter of the Administrative Code dealing with the rubber industry applied to the reroll machine, the general rules for that industry applied but merely supplemented—and did not supplant—the workshop and factory rules, including the nip-point rule, that applied to all workers. 38 Ohio St.3d at 817, 527 N.E.2d 815. Here, unlike in *Hartco*, the calender was expressly covered in Ohio Adm.Code 4123:1-13-03.

{¶ 21} Because a VSSR award is a penalty, a specific safety requirement must be strictly construed and all reasonable doubts concerning the interpretation must be resolved in favor of the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172, 545 N.E.2d 1216 (1989). A plain reading of the rules indicates that Ohio Adm.Code 4123:1-5-11(D)(10)(a) does not apply to calenders, because of the exception in Ohio Adm.Code 4123:1-5-11(D)(10)(b) for "[m]achinery covered expressly by requirements contained in other codes of specific requirements of the Ohio bureau of workers' compensation." The commission's decision that 31 violated Ohio Adm.Code 4123:1-5-11(D)(10)(a) is contrary to law, because the rule did not apply.

{¶ 22} 31 has met its burden of showing a clear legal right to the relief requested and is entitled to a writ of mandamus. *See State ex rel. M.T.D. Prods., Inc. v. Stebbins*, 43 Ohio St.2d 114, 119, 330 N.E.2d 904 (1975). Therefore, we

---

[2] Effective November 1, 2003, former Ohio Adm.Code 4121:1-5-11 was renumbered Ohio Adm.Code 4123:1-5-11. *See* 2003-2004 Ohio Monthly Record 940.

reverse the judgment of the court of appeals and issue a writ of mandamus that orders the commission to vacate its order allowing a VSSR award and to issue a new order that denies Ashworth's VSSR-award application.

Judgment reversed

and writ granted.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'NEILL, J., dissents, with an opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 23} Respectfully, I dissent.

{¶ 24} I have dissented before when this court has overstepped its constitutional boundaries in order to overturn an Industrial Commission order granting an award for the violation of a specific safety requirement ("VSSR"). *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 145 Ohio St.3d 76, 2015-Ohio-4798, 47 N.E.3d 109 (O'Neill, J., dissenting). I regret that once again, restraint and logic have lost out in favor of personal preferences, and I must dissent from this court's overzealous meddling in administrative matters.

{¶ 25} Ultimately, this case presents a fair disagreement between an employer—appellant, 31, Inc.—and the Industrial Commission about a safety regulation. Ohio Adm.Code 4123:1-5-11(D)(10)(a) requires employers to provide means "to protect employees exposed to contact with nip points." A "nip point" is, broadly, "the point or points at which it is possible to be caught between the moving parts of a machine, or between the material and the moving part or parts of a machine." Ohio Adm.Code 4123:1-5-01(B)(94). The parties disagree about whether Ohio Adm.Code 4123:1-5-11(D)(10)(a) applies to employers that are also regulated by the rubber-and-plastic-industries safety regulations found in Ohio Adm.Code Chapter 4123:1-13. On the one hand, 31, Inc., argues that the calender

it operates at its factory falls within the "exception" in Ohio Adm.Code 4123:1-5-11(D)(10)(b) for "[m]achinery covered expressly by requirements contained in other codes of specific requirements of the Ohio bureau of workers' compensation." On the other hand, the commission rightly argues that according to Ohio Adm.Code 4123:1-13-01, the regulations that apply to the rubber and plastic industries were explicitly intended to "supplement" the regulations found in Ohio Admin.Code 4123:1-5. This disagreement was settled at the Industrial Commission. Its decision should have been final.

**{¶ 26}** The majority barely describes the standard that we are bound to follow when reviewing a lower court's decision denying an employer's petition for a writ of mandamus that would compel the Industrial Commission to vacate an order granting a VSSR award. Under the law, "[t]he interpretation of a specific safety requirement lies exclusively with the commission." *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 122 Ohio St.3d 428, 2009-Ohio-3502, 912 N.E.2d 85, ¶ 10. We *must* therefore "defer to the commission's expertise in its construction of the safety code unless that construction is shown to be an abuse of discretion" just as we always "defer to an agency's interpretation of its own rule, as long as it is reasonable." *State ex rel. Richmond v. Indus. Comm.*, 139 Ohio St.3d 157, 2014-Ohio-1604, 10 N.E.3d 683, ¶ 25, 28.

**{¶ 27}** Applying that stringent, deferential standard, we have required a claimant challenging the commission's *denial* of a VSSR award to "establish that his or her injury resulted from the employer's failure to comply with a specific safety requirement" while construing "all reasonable doubts concerning the interpretation of the safety standard * * * against its applicability to the employer." *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 171-172, 545 N.E.2d 1216 (1989). When the commission has determined that a specific safety requirement *does* apply to an employer, we have required the employer to show that the commission abused its discretion before we will issue a writ of mandamus to correct

the commission's decision.  *See State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202, 204, 522 N.E.2d 548 (1988).  Review for an abuse of discretion is severely limited—we interfere only when we come across something more than an error of law or judgment, and we must avoid substituting our judgment for the judgment of a court or agency that has already considered an issue.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *accord State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster*, 22 Ohio St.3d 191, 193, 489 N.E.2d 288 (1986).

{¶ 28} Whether the commission has granted or denied a VSSR award, we must deny a writ of mandamus that would substitute our judgment for the commission's judgment if there is a "bona fide difference of opinion as to the interpretation of the safety requirement in question."  *State ex rel. Wilms v. Blake*, 144 Ohio St. 619, 627, 60 N.E.2d 308 (1945).

{¶ 29} The Ohio Constitution demands no less deference, and it probably demands more.  I have argued before that "it is not the Supreme Court's role to interpret rules for the commission in VSSR cases" or to "advance alternate theories that support one outcome or another."  *Precision Steel Servs.*, 145 Ohio St.3d 76, 2015-Ohio-4798, 47 N.E.3d 109, at ¶ 27 (O'Neill, J., dissenting).  I find support for this conclusion in the plain language of Article II, Section 35 of the Ohio Constitution, which provides the courts with *no role* in interpreting specific safety requirements:

> Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the General Assembly or in the form of an order adopted by such board, *and its decision shall be final * * *.*

(Emphasis added.)   Reading that passage early on in the history of workers' compensation, and with an eye toward giving it meaning, this court adopted a rule that the commission's decision "whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement" was exclusive and final.  *Slatmeyer v. Indus. Comm.*, 115 Ohio St. 654, 155 N.E. 484 (1926), syllabus.   At the same time, we reserved "legal, fundamental, or jurisdictional questions" to the courts.  *Id*. at 657.

**{¶ 30}** In the following decades, we treated the applicability of a specific safety requirement to an employer as a question left exclusively to the judgment of the commission.  *E.g.*, *State v. Ohio Stove Co.*, 154 Ohio St. 27, 38, 93 N.E.2d 291 (1950) ("Either there was a violation and a consequent injury as a result thereof, or there was no such violation, or, if there was, no such injury resulted therefrom. The determination by the commission of these facts, whether favorable or unfavorable to the employee, under the provisions of Section 35, Article II of the state Constitution, is final"); *see also State ex rel. Moore v. Indus. Comm.*, 129 Ohio St. 195, 196-197, 194 N.E. 370 (1935).  Our own decisions in the early days of VSSR litigation focused almost uniformly on the constitutional question whether or not a safety requirement was "specific" within the meaning of Article II, Section 35. *E.g.*, *State ex rel. Howard Eng. & Mfg. Co. v. Indus. Comm.*, 148 Ohio St. 165, 168-170, 74 N.E.2d 201 (1947).

**{¶ 31}** In the 1970s, the rule in *Slatmeyer* began to evolve into the "some evidence" rule we commonly apply today.  *See State ex rel. Mees v. Indus. Comm.*, 29 Ohio St.2d 128, 131, 279 N.E.2d 861 (1972).  In *Mees*, we cherry-picked the conclusion from *State ex rel. Allied Wheel Prods., Inc. v. Indus. Comm.* that "there was evidence upon which the [commission's] finding might properly rest, and in this circumstance the determination of respondent became final," 166 Ohio St. 47, 50, 139 N.E.2d 41 (1956), and took it out of context, conflating the existence of

evidence supporting a commission finding with the absence of an abuse of discretion. *Mees* at 131. *Mees* represents a perfunctory application of *Allied Wheel Prods.*, a case in which we cited *Slatmeyer*, *Moore*, *Howard Eng. & Mfg. Co.*, and *Ohio Stove Co.* in support of the finality of an Industrial Commission decision regarding the application of a specific safety requirement. *Allied Wheel Prods.* at 50. Indeed, our statement in *Allied Wheel Prods.* that "there was evidence upon which the [commission's] finding might properly rest" was made to dismiss the employer's baseless claim that there was no such evidence. *Id.*

{¶ 32} Throughout the 1970s, we deferred to the Industrial Commission on the interpretation and application of specific safety requirements less and less. In 1977, we disagreed with the commission that safety regulations requiring guard rails applied to a roof when we declared that "the space around the edge of a roof is not an opening pursuant to [former Industrial Commission Rule] IC-3-03.09 and the roof is not a platform pursuant to [former Industrial Commission Rule] IC-3-07.06." *State ex rel. City Iron Works, Inc. v. Indus. Comm.*, 52 Ohio St.2d 1, 6, 368 N.E.2d 291 (1977). We conflated our own disagreement regarding the applicability of these regulations with the absence of *evidence* of a violation and called the commission's decision to the contrary an abuse of discretion. *Id.* In 1979, we declared that it was not strictly "necessary" within the meaning of former Industrial Commission Rule IC-3-05.03(A)(5) for a crane on which a worker was suspended to come within 12 feet of power lines while he washed an electric sign. *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 51-55, 386 N.E.2d 1107 (1979). His electrocution and death occurred when the crane came into accidental contact with high-voltage electrical lines. *Id* at 51. These events were— *we thought*—merely accidental, and "if the crane operator had been careful, the job could have been successfully completed without the boom coming within 12 feet of the electrical lines." *Id* at 51. We criticized the commission's "result-oriented approach in its determination that [former] Rule IC-3-05.03(A)(5) was violated by

appellant." *Id* at 53. In both cases, we substituted our own judgment for the commission's judgment regarding the applicability of regulations the commission had itself created. And in both cases, we delved deeply into the facts of an injury in order to disagree with the commission. So much for the *Slatmeyer* approach, under which this court heeded the text of the Ohio Constitution.

{¶ 33} Since it was amended in 1923, the text of Article II, Section 35 of the Ohio Constitution has stayed the same. The trend at this court, however, has changed to a notably more liberal regime that will dabble freely in judicial re-regulation. Today's case is simply another instance of this court substituting its judgment for the judgment of the commission regarding the applicability of a specific safety requirement. The majority barely describes the relevant standard of review because there is no way to write that standard down, faithfully apply it, and reach the result the majority reaches.

{¶ 34} Most remarkably, the majority bends over backwards to distinguish an opinion this court issued in almost identical circumstances in 1988. *See State ex rel. Hartco, Inc., Custom Coated Prods. v. Indus. Comm.*, 38 Ohio St.3d 181, 527 N.E.2d 815 (1988). In *Hartco*, we considered a VSSR award that the commission granted because a man's "right arm and hand were drawn into a reroll machine that was winding a sheet of rubberized material." *Id*. at 181. Just as in the present case, the commission found a violation of former Ohio Adm.Code 4121:1-5-11(D)(10)(a),[3] the regulation requiring employers to provide "means" to "protect employees exposed to contact with nip points." *Id*. at 181-182. Just as in this case, the relator in *Hartco* argued "that because the machine in question is used in the rubber and plastics industry covered under [former] Ohio Adm.Code Chapter 4121:1-13, the (D)(10)(b) exception applies." *Id*. at 182. We disagreed, quoting the following portion of former Ohio Adm.Code 4121:1-5-01(A):

---

[3] On November 1, 2003, former Ohio Adm.Code Chapter 4121:1-5 was renumbered Ohio Adm.Code Chapter 4123:1-5. *See* 2003-2004 Ohio Monthly Record 940.

> " * * * Specific requirements of other codes [chapters] adopted by the industrial commission of Ohio shall apply to the particular industry covered by any such other code, and, to the extent of conflict between this code and such other, the latter shall govern, but in all other respects this code shall be deemed to apply and the other to be a supplement of this."

(Brackets added in *Hartco*.) *Hartco* at 182, quoting former Ohio Adm.Code 4121:1-5-01(A). We held that former "Ohio Adm.Code Chapter 4121:1-13 *contains no nip-point protection provision* that, if conflicting, would render it controlling." (Emphasis added.) *Id.* "Thus," we held, former "Ohio Adm.Code Chapter 4121:1-13 must be read as supplementing, not supplanting, [former] Ohio Adm.Code 4121:1-5-11(D)(10)(a)." *Id.* The requirements of all of these provisions, including and especially Ohio Adm.Code 4123:1-5-01(A), are still in effect.

{¶ 35} In a weak attempt to distinguish *Hartco*, the majority claims that this court came to its decision in that case "because no *specific rules* within the chapter of the Administrative Code dealing with the rubber industry applied to the reroll machine" in *Hartco*. (Emphasis sic.) Majority opinion at ¶ 20. That statement is untrue in two ways. First, as emphasized above, we held more narrowly in *Hartco* that former "Ohio Adm.Code Chapter 4121:1-13 *contains no nip-point protection provision* that, if conflicting, would render it controlling." *Hartco* at 182. That is still true: Ohio Adm.Code Chapter 4123:1-13 does not contain nip-point rules conflicting with the rule in Ohio Adm.Code 4123:1-5-11(D)(10)(a). The Industrial Commission has reviewed the rubber and plastic industries' regulations probably a half dozen times since our decision in *Hartco* in 1988 and in all that time has not provided a conflicting rule for the industry. Second, machines like the reroll

machine in *Hartco* that "wind-up" material or "around which material travels" have been regulated continuously within the Administrative Code since at least 1982. Ohio Adm.Code 4123:1-13-04(C); former Ohio Adm.Code 4121:1-13-04(C). The code requires "readily accessible safety trips or devices to disengage them from their immediate source of power" when these machines are "exposed to contact." Ohio Adm.Code 4123:1-13-04(C). We were no doubt aware of that when we stated that the entire *chapter* regulating the rubber and plastic industries lacked nip-point rules that conflict with the rules in former Ohio Adm.Code 4121:1-5-11(D)(10)(a). *See Hartco* at 182. *Hartco* settles this case. The majority's attempt to distinguish *Hartco* is disingenuous at best. And we owe even greater deference to the Industrial Commission's order in this case given that it followed *Hartco*.

{¶ 36} Fundamentally, this lawsuit is not a reasonable vehicle for 31, Inc., to seek a change in the regulations governing safety at its rubber-processing facility. Rather, it is an end run around the regulatory structures set up to protect workers. If 31, Inc., cannot reasonably protect a worker from machinery regulated by the Administrative Code due to "practical difficulty or unnecessary hardship," then it should have sought an exemption from the general rules governing workshops and factories before it had its workers operate a dangerous machine. *See* Ohio Adm.Code 4123:1-5-01(A). The stated purpose of the regulations governing workshop and factory safety is "to provide reasonable safety for life, limb, and health of employees." *Id*. Providing safety is necessarily a proactive task that must be undertaken by every industrial employer, and it is wholly inappropriate to litigate workplace safety on a case-by-case basis after workers have been hurt. Absent some outlandish interpretation of an administrative rule—markedly absent here— we should defer to the decision-makers that have already passed on this case. *Wilms*, 144 Ohio St. at 627, 60 N.E.2d 308. That is even truer when, as in this case, the court of appeals followed our past authority regarding both VSSRs and the specific regulations at issue here and then appropriately deferred to the Industrial

14

Commission.  10th Dist. Franklin No. 14AP-925, 2016-Ohio-3526, ¶ 6-7.  I would affirm the court of appeals' judgment.

**{¶ 37}** In consideration of the foregoing circumstances, I dissent.

_____

Black, McCuskey, Souers & Arbaugh, Brian R. Mertes, and Rod A. Moore, for appellant.

Michael DeWine, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee Industrial Commission.

Phillips & Mille Co., L.P.A., Nicholas E. Phillips, and Stewart S. Wilson, for appellee Duane Ashworth.

_____