THE STATE, EX REL. HARTCO, INC., CUSTOM COATED PRODUCTS, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as State, ex rel. Hartco, Inc., Custom Coated Products, *v.* Indus. Comm. (1988), 38 Ohio St. 3d 181.]

(No. 87-285—Submitted May 3, 1988—Decided August 17, 1988.)

*Cohen, Todd, Kite & Stanford, Edward A. Hogan* and *Thomas C. Kilcoyne,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Teresa-Oglesby McIntyre,* for respondent Industrial Commission.

*Kondritzer, Gold & Frank Co., L.P.A.,* and *William E. Clements,* for respondent John Runyon.

*Per Curiam.* Relator contends that Ohio Adm. Code 4121:1-5-11(D)(10)(b) exempts it from the requirements of Ohio Adm. Code 4121:1-5-11(D)(10)(a). In the alternative, it argues that if the

(D)(10)(b) exception is found inapplicable, the commission nonetheless abused its discretion under (D)(10)(a) in equating the term "means" with the term "guard." Moreover, it contends that, contrary to the commission's determination, it did provide a "means" of protection under (D)(10)(a). Relator's contentions are without merit.

Ohio Adm. Code 4121:1-5-11(D)(10) provides that:

"Nip points.

"(a) Means shall be provided to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface.

"(b) Exception.

"Machinery covered expressly by requirements contained in other codes of specific requirements of the industrial commission of Ohio."

Relator contends that because the machine in question is used in the rubber and plastics industry covered under Ohio Adm. Code Chapter 4121:1-13, the (D)(10)(b) exception applies. However, Ohio Adm. Code 4121:1-13-01(A), dealing with rubber and plastics, indicates that "[t]hese specific requirements *supplement* those of Chapter 4121:1-5 of the Administrative Code." (Emphasis added.) Moreover, Ohio Adm. Code 4121:1-5-01(A) states that Chapter 4121:1-5's specific requirements apply to *all* workshops and factories and further provides:

"* * * Specific requirements of other codes [chapters] adopted by the industrial commission of Ohio shall apply to the particular industry covered by any such other code, and, to the extent of conflict between this code and such other, the latter shall govern, but in all other respects this code shall be deemed to apply and the other to be a supplement of this."

Ohio Adm. Code Chapter 4121:1-13 contains no nip-point protection provision that, if conflicting, would render it controlling. Thus, Ohio Adm. Code Chapter 4121:1-13 must be read as supplementing, not supplanting, Ohio Adm. Code 4121:1-5-11(D)(10)(a). To interpret the Ohio Administrative Code as relator has suggested would effectively deprive rubber and plastics workers of nip-point protection simply because of the nature of the employer's industry. Such an interpretation runs contrary to Ohio Adm. Code Chapter 4121:1-5's intention of providing a safe environment for *all* workers.

In the alternative, relator argues that if the (D)(10)(b) exception is found inapplicable, equation of "means" with "guard" under (D)(10)(a) was an abuse of discretion.

The use of the term "guard" by the commission was not fatal to its determination that a specific safety requirement was violated. We find that the machine's safety cord was not a "means" of protection complying with (D)(10)(a). Relator argues that (D)(10)(a)'s language does not require that employees be *prevented* from nip-point contact, but instead merely envisions protection of employees who are exposed to contact. These contentions are not persuasive. Ohio Adm. Code Chapter 4121:1-5's stated goal of workplace safety is obviously best achieved through prevention. While devices that lessen severity of injury once an accident occurs are important, they are no substitute for protection that keeps them from happening in the first place. Prevention is implicit throughout the code. Ohio Adm. Code Chapter 4121:1-5 is replete with provisions requiring devices that are preventive by definition and description without specifically so stating. (See, *e.g.,* Ohio Adm. Code 4121:1-5-07[D][2][a] [portable chain saws must be

guarded]; 4121:1-5-07[E] [the top half of power grinding wheels must be enclosed]; 4121:1-5-11[D][3] [power knives must be guarded]; 4121:1-5-11 [C][1][a] [forging hammers and presses must be blocked during die change or repair]; and 4121:1-5-11[D][8][a] [exposed blade guillotine cutters require two-hand control device].) Where the common-sense purpose of the protection is clearly to prevent body contact, literal preventive phraseology is not included. It is assumed that the employer will be adequately apprised of the hazard to be guarded against.

The safety cord does not prevent contact with nip points; it provides a way to stop the machine should body entanglement occur. In *State, ex rel. United States Steel Corp., v. Cook* (1983), 10 Ohio App. 3d 183, 10 OBR 254, 461 N.E. 2d 916, the Court of Appeals for Franklin County acknowledged the difference in purpose between a safety rule that protects against inadvertent contact with machinery and one that requires a means to stop the machinery through operator action once entanglement has occurred.

Ohio Adm. Code 4121:1-5-01(A) provides that "[i]n cases of practical difficulty or unnecessary hardship, the industrial commission of Ohio may grant exceptions from the literal requirements of this code to permit the use of other devices or methods when, in the opinion of the industrial commission, the equivalent protection is thereby secured." In this situation, the commission in effect determined that rela-tor's safety cord did not provide protection equivalent to that contemplated by (D)(10)(a).

Whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission, subject only to the "abuse of discretion" test. *State, ex rel. Cleveland Wrecking Co., v. Indus. Comm.* (1988), 35 Ohio St. 3d 248, 250, 520 N.E. 2d 228, 231; *State, ex rel. A-F Industries, v. Indus. Comm.* (1986), 26 Ohio St. 3d 136, 140, 26 OBR 117, 120, 497 N.E. 2d 90, 93-94; *State, ex rel. Ish, v. Indus. Comm.* (1985), 19 Ohio St. 3d 28, 31, 19 OBR 24, 26, 482 N.E. 2d 941, 944. An abuse cannot be shown, however, when there is some evidence in the record to support the commission's findings. *State, ex rel. Fiber-Lite Corp., v. Indus. Comm.* (1988), 36 Ohio St. 3d 202, 522 N.E. 2d 548; *State, ex rel. Burley, v. Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 20, 31 OBR 70, 72, 508 N.E. 2d 936, 938. In this case, relator's failure to provide a "means" to prevent Runyon from coming in contact with nip points constitutes "some evidence" supporting the commission's determination that a specific safety requirement was violated.

Accordingly, the writ of mandamus is denied.

*Writ denied.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.