[Cite as *State ex rel. 31, Inc. v. Indus. Comm.*, 2016-Ohio-3526.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. 31, Inc., | : | |
| Relator, | : | |
| v. | : | No. 14AP-925 |
| The Industrial Commission of Ohio and Duane Ashworth, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## D E C I S I O N

Rendered on June 21, 2016

**On brief:** *Black, McCuskey, Souers & Arbaugh,* and *Brian R. Mertes,* for relator.

**On brief:** *Michael DeWine*, Attorney General, *Andrew J. Alatis* and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

**On brief:** *Nicholas E. Phillips,* for respondent Duane Ashworth.

IN MANDMAUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, 31, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting respondent, Duane Ashworth's ("claimant"), application for an additional award for violation of a specific safety requirement ("VSSR"), and to enter an order denying said application.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that: (1) the commission did not abuse its discretion in granting a rehearing; and (2) the commission did not abuse its discretion in finding that a VSSR award is appropriately based on relator's failure to provide a means to protect employees exposed to contact with nip points. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In its first objection, relator contends that the commission abused its discretion when it granted the claimant's motion for rehearing because there was no mistake of law in the original hearing officer's decision. We disagree.

{¶ 4} As noted by the magistrate, Ohio Adm.Code 4123:1-5-01(A) provides that:

> The purpose of this chapter of the Administrative Code is to provide reasonable safety for life, limb, and health of employees. In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of the rules of this chapter to permit the use of other devices or methods when, in the opinion of the bureau, the equivalent protection is thereby secured.

{¶ 5} Under this code provision, in cases where an employer demonstrates practical difficulty or unnecessary hardship, the Ohio Bureau of Workers' Compensation ("BWC") may grant exceptions to the literal requirements of the rules if equivalent protection is provided. Here, however, the BWC did not grant relator an exception to the guarding requirements set forth in Ohio Adm.Code 4123:1-5-11(D)(10)(a). Therefore, the staff hearing officer's May 14, 2013 order contains a clear mistake of law because it applies an exception to the guarding requirements contained in Ohio Adm.Code 4123:1-5-11(D)(10)(a) even though the BWC did not grant an exception prior to the claimant's injury. We agree with the magistrate that an exception cannot apply until the BWC has granted it. This conclusion is supported by *State of Ohio ex rel. James W. Smith Lumber Co., Inc. v. Indus. Comm.*, 10th Dist. No. 81AP-178 (Sept. 15, 1981) (employer needs BWC approval of equivalent protection in advance of an industrial injury to claim an exception

to the literal requirements of a specific safety rule).   For these reasons, we overrule relator's first objection.

{¶ 6}   In its second objection, relator argues that the magistrate erred when he relied on *State ex rel. Hartco, Inc. Custom Coated Prods. v. Indus. Comm.*, 38 Ohio St.3d 181 (1981) in finding that the commission did not abuse its discretion in finding that relator violated Ohio Adm.Code 4123:1-5-11(D)(10)(a).   In essence, relator argues that Ohio Adm.Code 4123:1-5-11(D)(10)(a) does not apply to the calendar machine at issue in this case because Ohio Adm.Code Chapter 4123:1-13 specifically addresses calendars.   Again, we disagree.

{¶ 7}   As noted by the magistrate, the *Hartco* court analyzed and interpreted the very same provisions of the Ohio Adm.Code at issue here.   *Hartco* held that former "Ohio Adm.Code Chapter 4121:1-13 [now 4123:1-13] must be read as supplementing, not supplanting, former Ohio Adm.Code 4121:1-5-11(D)(10)(a) [now 4123:1-5-11(D)(10)(a)]." Therefore, *Hartco* specifically rejected the argument advanced by relator.   The fact that *Hartco* involved a reroll machine rather than a calendar is of no significance.   Because the magistrate did not err when he relied upon *Hartco*, we overrule relator's second objection.

{¶ 8}   Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.   Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.   In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

BROWN and BRUNNER, JJ., concur.

————————————

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. 31, Inc., | : | |
| Relator, | : | |
| v. | : | No. 14AP-925 |
| The Industrial Commission of Ohio and Duane Ashworth, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on March 8, 2016

*Black, McCuskey, Souers & Arbaugh,* and *Brian R. Mertes,* for relator.

*Michael DeWine,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Nicholas E. Phillips,* for respondent Duane Ashworth.

### IN MANDAMUS

{¶ 9} In this original action, relator, 31, Inc., requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting to respondent, Duane Ashworth ("claimant"), his application for an additional award for violation of a specific safety requirement ("VSSR"), and to enter an order denying the application.

Findings of Fact:

{¶ 10} 1. On December 20, 2011, claimant severely injured his right upper extremity while working at a machine known as a calender. On that date, claimant's right arm was pulled between the rollers of the calender.

{¶ 11} 2. The industrial claim (No. 11-864624) was allowed.

{¶ 12} 3. On July 2, 2012, claimant filed an application for a VSSR award. In his application, claimant alleged that relator had violated Ohio Adm.Code 4123:1-5-11(D)(10)(a) regarding nip points and that the violation was the cause of his injury.

{¶ 13} 4. The VSSR application prompted an investigation by the Safety Violations Investigation Unit ("SVIU") of the Ohio Bureau of Workers' Compensation ("bureau").

{¶ 14} 5. On September 20, 2012, an SVIU investigator conducted an on-site investigation at the workshop or factory where claimant was injured. The president of 31, Inc., Paul Clark, and relator's counsel were present during the on-site visit.

{¶ 15} 6. On October 9, 2012, the SVIU investigator issued a report of investigation. Under the heading "Discussion," seven enumerated paragraphs set forth the investigator's findings during the on-site investigation:

> [Two] During the on-site investigation Investigator Riley viewed and photographed the electric Farrel® three roll calender (model Three Roll serial number 9179), involved in Mr. Ashworth's injury, according to the employer * * *. The calender rolls large chunks of rubber into thin gage rubber. The calender was purchased in 1999, has not been moved from its location since the purchase. Per the employer, the calender has not been modified since the purchase.
>
> [Three] Mr. Clark advised that the claimant, Mr. Ashworth was at the back of the calender and was responsible for removing the rubber from the bottom roll of three rolls. Mr. Ashworth missed the rubber, tried to retrieve the rubber, and his hand became caught between the bottom and middle rolls * * *. Mr. Clark further advised instead of attempting to retrieve the rubber, Mr. Ashworth should have let the rubber continue around the roll and alerted the front end person to cut the rubber again or he should have activated the emergency pull cord to stop the rolls * * *.
>
> [Four] The rolls are approximately sixty inches (60") in length and approximately twenty inches (20") to twenty-two inches (22") in diameter, Mr. Clark explained. The rolls are

power driven in-running rolls and the bottom roll is not heated * * *. At the time of the injury there was approximately three inches (3") between the middle roll and bottom roll. Mr. Clark further explained both the front and the back of the calender are equipped with emergency pull cords located on each side of the calender * * *. When activated the emergency pull cords stop the rolls from rolling. Mr. Clark stated the emergency pull cords were within easy reach of Mr. Ashworth at the time of the injury and were working correctly as he used one to stop the calender. The emergency pull cords are inspected daily by the shift supervisor. There was not any guarding in the area where the injury occurred at the time of the injury * * *.

[Five] Mr. Ashworth was a mill operator responsible for pre-forming uncured rubber, mixing rubber, and getting rubber ready for further processing, according to the employer * * *. Mr. Ashworth was provided with on-the-job training which typically lasts ninety days * * *. Per the employer, at the time of the injury Mr. Ashworth was not required to wear any personal protective equipment * * *.

[Six] Listed witnesses Cliff Mayse, George Helter, and Cheavis Webb were interviewed during the on-site investigation. Affidavits were obtained from all three workers at that time * * *.

[Seven] Investigator Riley interviewed claimant, Duane T. Ashworth September 19, 2012 via telephone. An affidavit was obtained from Mr. Ashworth on September 27, 2012 * * *. Mr. Ashworth stated he was at the back of the calender machine and attempted to pull the rubber off of the bottom roll. The rubber wrapped around three of his fingers, and his right hand was pulled into the roll * * *. Ashworth stated, when his injury occurred there were not any guards to prevent his hand from entering the rolls * * *. His hand became caught between the bottom and middle power driven in-running rolls * * *.

{¶ 16} 7. Appended to the SVIU report is claimant's affidavit executed September 27, 2012.  In the affidavit, claimant avers:

[Two] I began working at 31 Inc. August 11, 2010 as a mill operator (I also worked at the company for a couple of years prior to this and left, I do not remember those dates). At the time of my injury I was a calender operator responsible for

putting rubber on the machine and operating the calender machine.

[Three] I was provided with some on the job training from a supervisor. I basically trained myself by watching others. I understood how to perform my job duties at the time of my injury.

[Four] I was not required to wear any personal protective equipment at the time of my injury. I was not wearing any personal protective equipment at the time of my injury.

[Five] My injury involved a Calender machine; it is powered by electric. I was running the back side of the machine and George Helzer [sic] (Supervisor) was pushing material (rubber) through the front side of the machine. The rubber came on the bottom of the roll, I attempted to pull the rubber off of the roll, the rubber wrapped around three of my fingers, and my right hand was pulled into the roll. My hand was pulled into the machine approximately eight inches.

[Six] There were three rolls on top of the other. The top two rolls open up to allow the rubber to run through. My hand became caught between the bottom roll and the middle roll. The bottom roll was approximately three and one half feet long and approximately two to three feet in diameter. The middle and top rolls were approximately this size. The bottom roll and middle roll were power driven in running rolls.

[Seven] There was not any guarding for the area where my injury occurred. This is an area where employees stand and remove the rubber. There was not anything to prevent my hand from entering the rolls.

[Eight] There was an emergency stop cable in the area where my injury occurred. I could reach this when my injury occurred and I used this cable. When I pulled the cable the machine stopped.

[Nine] I was caught in the rolls longer because Mr. Heltzer [sic] did not pull the plates out of the floor to lower the bottom roll to release my hand. I was eventually released after the roll was lowered.

[Ten] At the time of my injury we were running a wig wag job. There was a water tank located against the back of the calender. This left me an approximately two foot area to

work in; there was two feet between the tank and the machine. The chain guard for the tank was against the calender. This did not leave me much room to work. Almost every job on this machine involves us pulling off the rubber, but on this job we are closer to the rolls.

{¶ 17} 8. Appended to the SVIU report is the affidavit of George Helter executed September 20, 2012:

> [Two] I began working at 31 Inc. in 1995 as a laborer. At the time of Mr. Ashworth's injury I was a supervisor.
>
> [Three] Mr. Ashworth was not required to wear any personal protective equipment at the time of his injury.
>
> [Four] Mr. Ashworth's injury involved the calender machine. I was on the front side of the calender. I had cut the rubber. Mr. Ashworth was on the back side of the calender and I am not sure what happened. I heard Mr. Ashworth say shut the machine off. I activated the two emergency pull cords located on each side of the calender on the front side of the calender. When I pulled the cords the calender, included the rollers, stopped immediately.
>
> [Five] After I cut the rubber, I put the rubber on the bottom roll, and it was fed underneath the calender, and went to the other side. Once the rubber reaches the back side an employee grabs the rubber, feeds it to the dip tank, and it goes onto a belt.
>
> [Six] The employee on the back side of the calender grabs the rubber with his hands. A lot of times the rubber does not stick to the roll and falls off itself. The employee does not have to reach in between the rolls. Employees are not allowed to reach in between the rolls.
>
> [Seven] If Mr. Ashworth was not able to grab the rubber in time, he should have let the rubber continue on the roll, and I would have cut it on the front end.
>
> [Eight] There is not any guard in the area between the rolls. There is not any way to place a guard in this area because the employee would not be able to access the rubber.

{¶ 18} 9. On May 14, 2013, the VSSR application was heard by a staff hearing officer ("SHO"). The hearing was recorded and transcribed for the record. Following the

hearing, the SHO issued an order denying the VSSR application. The SHO's order of May 14, 2013 explains:

> It is the finding of the Staff Hearing Officer that the Application for Violation of a Specific Safety Requirement be denied for the reason that the Injured Worker has not cited a specific safety requirement which was violated when this injury occurred.
>
> Specifically, the Injured Worker was an operator on a calender machine at the time of injury. A mass of warm rubber material would be fed into this calender machine on the front side. This would be fed through rollers which would work it down to the correct size and thickness, and the operator on the front side of the machine would then cut the material with a knife and feed it over the bottom of three rollers to the operators on the back side of the machine. These rollers turned relatively slowly, and it was estimated at hearing that the roller made approximately seven revolutions per minute. The operators on the back side were performing the "wig wag" job at the time of this incident. The Injured Worker would start to pull the warm, somewhat sticky rubber material off of the bottom drum, and he and a co-worker would put hooks on both sides of the sheet of rubber, and pull it away from the calender to a nearby dip tank. While attempting to pull the rubber off of the roll, the rubber somehow wrapped around or caught some of the Injured Worker's fingers, and his right hand up to his forearm was pulled into a three-inch gap between the bottom and middle rollers before he and his co-workers could activate the emergency stop cords. The rollers did immediately stop, but it took about 1/2 hour for others to lower the bottom roller to allow enough space to pull the Injured Worker's right arm out.
>
> It is well settled that in order to establish a VSSR claim, the Injured Worker must prove that: (1) an applicable and specific safety requirement was in effect at the time of the injury, (2) the Employer failed to comply with the requirement, and (3) the failure to comply was the proximate cause of the injury in question. State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster, 22 Ohio St.3d 191 (1986).
>
> The Injured Worker has alleged the violation of Ohio Adm.Code 4123:1-5-11(D)(10)(a). Sections (a) and (b) of this provision state:

"(10) Nip points.

(a) Means shall be provided to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface.
(b) Exception.

Machinery covered expressly by requirements contained in other codes of specific requirements of the Ohio bureau of workers' compensation."

It is found that the requirements of Ohio Adm.Code 4123:1-5-11(D)(10)(a) were in effect at the time of injury herein, but that the provisions did not apply to the calender machine involved, and that the Employer therefore did not fail to comply with the guarding requirements. In the Scope section of Ohio Adm.Code 4123:1-5-01(A), it is stated that "in cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of the rules of this chapter to permit the use of other devices or methods when in the opinion of the bureau, the equivalent protect[ion] is thereby secured." As the operation of the calender machine is described above, the rollers turned relatively slowly, and the workers needed to be able to grasp the rubber material as it came around the bottom roller to pull it away from the calender for further processing. Guards over the nip point were not practical, and there was testimony at hearing that guards were never used (transcript p. 51). Instead, and as provided for in Ohio Adm.Code 4123:1-13-03, extra safety lines and emergency stop cords and specified stopping limits were required.

The argument of counsel for the Employer, that the "exception" language in Ohio Adm.Code 4123:1-5-11(D)(10)(b) meant that only the provisions of 4123:1-13-03 applied, and not the provisions of 4123:1-5-11(D)(10)(a), is rejected. Per State ex rel. Hartco Inc. v. Indus. Comm., 38 Ohio St.3d 181 (1988), these sections supplement, but do not supplant, each other. While the court in Hartco did uphold the finding of a violation, the calender machine in that case was being used as a roll up machine and not for normal calender machine functions.

Therefore, once again, it is found that the nip point guarding provisions were not practical on the calender machine on which the injuries in this claim occurred, and that alternative

means were provided. A violation of the requirements of Ohio Adm.Code 4123:1-5-11(D)(10)(a) has not been established, and the request for the finding of a VSSR is denied.

{¶ 19} 10. Claimant moved for rehearing pursuant to Ohio Adm.Code 4121-3-20(E).

{¶ 20} 11. On September 21, 2013, another SHO mailed an order granting rehearing.  The SHO's order of September 21, 2013 explains:

It is the order of the Industrial Commission that the Motion for Rehearing be granted for the reason that the Injured Worker has demonstrated that the order mailed 07/06/2013 is based on a clear mistake of law or an obvious mistake of fact, in accordance with Ohio Administrative Code 4121-3-20(E)(1)(b).

The Order states that the normally required guard was not needed due to practical difficulty or unnecessary hardship as allowed under 4123:1-5-01(A). The order then states extra safety lines and emergency stop cords and specified stopping limits were provided instead. However, the order does not state the evidence relied upon in finding the extra safety lines, emergency stop cords, and specified stopping limits were provided. Further, the order does not explain how these provide equivalent protection to the normally required guard. Finally, the order does not address why the Industrial Commission can make such a finding without the BWC granting the exception first as discussed in the rule. Based on this it appears the order fails to comply with the legal requirement to provide the evidence relied upon to find alternatives were provided and they provided equivalent protection.

Pursuant to Ohio Adm.Code 4121-3-20, the order mailed is vacated. The Injured Worker's application is ordered set for rehearing.

{¶ 21} 12. On June 30, 2014, another SHO conducted a rehearing.  The rehearing was recorded and transcribed for the record.  Following the rehearing, the SHO issued an order granting the VSSR application.  The SHO determined that relator had violated Ohio Adm.Code 4123:1-5-11(D)(10)(a) relating to workshops and factories.  The SHO rejected relator's argument that the "exception" language of Ohio Adm.Code 4123:1-5-11(D)(10)(b)

mandates that only the provisions of Ohio Adm.Code 4123:1-13-3 relating to the rubber and plastic industries apply. The SHO relied heavily upon the decision of the Supreme Court of Ohio in *State ex rel. Hartco, Inc., Custom Coated Prods. v. Indus. Comm.,* **38 Ohio St.3d 181 (1988).**

{¶ 22} 13. The SHO's order of June 30, 2014 explains:

> It is the finding of the Staff Hearing Officer that the Application for Violation of a Specific Safety Requirement, filed by the Injured Worker 07/12/2014 [sic], is granted for the reason that the Injured Worker has cited a specific safety requirement which was violated when this injury occurred.
>
> Specifically, the Injured Worker was an operator on a calendar [sic] machine at the time of injury. A cubed mass of warm rubber material was fed into this calendar [sic] machine on the front side. This was fed through rollers which would work it down to the correct size and thickness, and the operator on the front side of the machine would then cut the material with a knife and feed it over the bottom of three rollers to the operators on the back side of the machine. These rollers turned relatively slowly, estimated at approximately 7 revolutions per minute. The operators on the back side, including the Injured Worker, were performing the "wig wag" job at the time of this industrial accident. The Injured Worker would start to pull the warm, somewhat sticky rubber off of the bottom drum, and he and a co-worker would put hooks on both sides of the sheet of rubber, and pull it away from the calendar [sic] to a nearby dip tank. While attempting to pull the rubber off of the roll, the rubber somehow wrapped around or caught some of the Injured Worker's fingers, and his right hand up to his forearm was pulled into a three-inch gap between the bottom and middle rollers before he and his co-workers could activate the emergency stop cords. The rollers did immediately stop, but it took about 1/2 hour for others to lower the bottom roller to allow enough space to pull the Injured Worker's right arm out away from the heated middle roll.
>
> It is further the finding of the Staff Hearing Officer that the Injured Worker's injury was the result of the Employer's failure to provide "Means to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface" as required by Ohio Administrative

Code section 4123:1-5-11(D)(10)(a) relating to Workshops and Factories. Sections (a) and (b) of this provision state:

(10) Nip points

(a) Means shall be provided to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface.

(b) Exception

Machinery covered expressly by requirements contained in other codes of specific requirements of the Ohio Bureau of Workers' Compensation.

The Employer asserts the defense that it was not subject to Ohio Administrative Code section 4123:1-5-11(D)(10) because it was in the Rubber and Plastics industry, which is subject to the separate safety requirements contained in Ohio Administrative Code 4123:1-13. Ohio Administrative Code section 4121:1-13-03 requires safety trips and stopping limits for calendars[sic]. It was stipulated by the parties at hearing that compliance with this section was met and that emergency stop cords were activated. The Employer asserts that it was not required to provide any guarding or other protection from contact with the nip point. The Employer presented a sales flyer of calendars [sic] in the Rubber and Plastics industry in order to demonstrate that no calendars [sic] provide guarding or other protection from contact with the nip point. Mr. Clark, on behalf of the Employer, testified that he had been in the Rubber and Plastics industry for over 25 years and had never seen a calendar [sic] machine in use which provided protection or other guarding from the nip point.

This argument by the Employer that the "exception" language in Ohio Administrative Code 4123:1-5-11(D)(10)(b) meant that only the provisions of 4123:1-13-03 applied, and not the provisions of 4123:1-5-11(D)(10)(a) is not persuasive. Pursuant to State ex rel. Hartco, Inc. v. Indus. Comm. (1988), 38 Ohio St.3d 181, 527 N.E.2d 815, these requirements for the Rubber and Plastics industry supplement, but do not supplant Ohio Administrative Code section 4123:1-5-11(D)(10) which provides safety requirements for all Workshops and Factories. Hartco held, and the Staff Hearing Officer finds, that the Employer is

required to prevent contact with nip points in a calendar [sic], as required by Ohio Administrative Code 4123:1-5-11(D)(10), as well as providing means to quickly stop the calendar [sic], as provided in Ohio Administrative Code section 4123:1-13-03. The reasoning is that the guarding required by section 4123:1-5-11(D)(10)(a) prevents an injury from occurring, while compliance with the plastics and rubber code section 4123:1-13-03 helps to minimize an injury after it has already happened.

Since the Staff Hearing Officer finds that the requirements of Ohio Administrative Code section 4123:1-5-11(D)(10)(a) were in effect at the time to the injury in this case, the Scope section of Ohio Administrative Code 4123:1-5-01(A) applies. The Scope section of Ohio Administrative Code 4123:1-5-01(A) states "in cases of practical difficulty or unnecessary hardship, the Ohio Bureau of Workers' Compensation may grant exceptions from the literal requirements of the rules of this chapter to permit the use of other devices or methods when, in the opinion of the Bureau, the equivalent protection is thereby secured." In this case, the Employer did not obtain a prior determination that it was entitled to an exception. As such, an exception has not been granted and therefore the Staff Hearing Officer finds that the Employer has not complied with the safety requirements of the applicable Code section 4123:1-5-11(D)(10)(A) [sic]. The Staff Hearing Officer agrees in this instance with the Injured Worker's counsel's argument that "the Employer may not unilaterally decide to ignore the specific safety requirement, wait until a worker is injured, and then claim that compliance with the requirements was not required because the requirements were not practical. If that were allowed, many employers would choose not to comply with safety requirements and to take their chances if an employee was injured" (See Brief of Duane T. Ashworth in Support of Motion for Re-Hearing, page 4). Counsel for the Injured Worker also submits State of Ohio ex rel. James W. Smith Lumber Co., Inc. v. The Industrial Commission of Ohio and Jackie D. Alley, (Sept. 15, 1981) Tenth Appellate District No. 81AP-178, 1981 WL 3463, p. 2, holding that an Employer must seek an advance determination as to whether it is entitled to an exception from a safety requirement, in support of this argument.

It is therefore ordered that an additional award of compensation be granted to the Injured Worker in the amount of 35 percent of the maximum weekly rate under

rule of <u>State ex rel. Engle v. Indus. Comm.</u>, (1944), 142 Ohio St. 425.

{¶ 23} 14. On November 7, 2014, relator, 31, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 24} As the commission explained in its June 30, 2014 order granting the VSSR application, relator did not comply with Ohio Adm.Code 4123:1-5-11(D)(10)(a) requiring that the employer shall provide a means to protect employees exposed to contact with nip points. It is largely undisputed that relator failed to provide such means. However, relator argues that Ohio Adm.Code 4123:1-5-11(D)(10)(b) provides an "exception" that permitted relator to comply with the nip point rule by complying with the safety rules set forth at Ohio Adm.Code 4123:1-13-03 regarding calenders. It is largely undisputed that relator did comply with the safety rules regarding calenders as set forth in Ohio Adm.Code 4123:1-13-03. Thus, the controversy here is focused on the interpretation to be given to the "exception" language of Ohio Adm.Code 4123:1-5-11(D)(10)(b).

{¶ 25} Two issues are presented: (1) did the commission abuse its discretion in granting rehearing pursuant to Ohio Adm.Code 4121-3-20(E), and (2) assuming that the commission appropriately granted rehearing, did the commission abuse its discretion in finding an unexcepted violation of Ohio Adm.Code 4123:1-5-11(D)(10)(a) that was the cause of the industrial injury.

{¶ 26} The magistrate finds: (1) the commission did not abuse its discretion in granting rehearing, and (2) the commission did not abuse its discretion in finding that a VSSR award is appropriately based upon relator's failure to provide a means to protect employees exposed to contact with nip points.

### Pertinent Provisions of the Ohio Administrative Code

{¶ 27} Chapter 4123:1-5 of the Ohio Administrative Code provides for "Workshop and Factory Safety."

Ohio Adm.Code 4123:1-5-01 is captioned "Scope and definitions."

Thereunder, Ohio Adm.Code 4123:1-5-01(A) captioned "Scope" provides:

In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of the rules of this chapter to permit the use of other devices or methods when, in the

> opinion of the bureau, the equivalent protection is thereby secured.
>
> The specific requirements of this chapter are requirements upon an employer for the protection of such employer's employees and no others and apply to all workshops and factories subject to the Workers' Compensation Act. * * * Specific requirements of other chapters of the Administrative Code adopted by the Ohio bureau of workers' compensation shall apply to the particular industry covered by any such other chapter, and, to the extent of conflict between this chapter and such other chapter, the latter shall govern, but in all other respects this chapter shall be deemed to apply and the other to be a supplement of this chapter.

{¶ 28} Ohio Adm.Code 4123:1-5-11 is captioned "Forging machines, other power machines and machine tools, hydraulic and pneumatic presses, and power press brakes."

{¶ 29} Thereunder, Ohio Adm.Code 4123:1-5-11(D) is captioned "Other power machines and machine tools."

{¶ 30} Thereunder, Ohio Adm.Code 4123:1-5-11(D)(10) is captioned "Nip points." Thereunder, the code provides:

> (a) Means shall be provided to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface.
>
> (b) Exception.
>
> Machinery covered expressly by requirements contained in other codes of specific requirements of the Ohio bureau of workers' compensation.

{¶ 31} Chapter 4123:1-13 of the Ohio Administrative Code is captioned "Rubber and Plastic Industries."

{¶ 32} Thereunder, Ohio Adm.Code 4123:1-13-01 is captioned "Scope and definitions."

{¶ 33} Thereunder, Ohio Adm.Code 4123:1-13-01(A), captioned "Scope," provides:

> The purpose of these safety requirements is to provide reasonable safety for life, limb and health of employees. In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions

from the literal provisions of these requirements or permit the use of other devices or methods when, in the opinion of the industrial commission, equivalent protection is thereby secured.

These specific requirements supplement those of Chapter 4123:1-5 of the Administrative Code, "Specific Safety Requirements of the Ohio Bureau of Workers' Compensation Relating to All Workshops and Factories," and are minimum requirements of an employer for the protection of such employer's employees and no others and apply to the rubber and plastic industries where rubber or plastics are processed.

{¶ 34} Thereunder, Ohio Adm.Code 4123:1-13-01(B)(3) provides the following definition:

"Calender" means a machine equipped with two or more metal rolls revolving in opposite directions and used for continuously sheeting or plying up rubber or plastic compounds and for frictioning or coating fabric with rubber or plastic compounds.

{¶ 35} Ohio Adm.Code 4123:1-13-03 is captioned "Calenders."

{¶ 36} Thereunder, Ohio Adm.Code 4123:1-13-03(A) is captioned "Calender safety controls."

{¶ 37} Thereunder, the code provides:

(1) Safety trip, face.

A safety trip rod, cable, or wire center cord shall be provided across each pair of in-running rolls, extending the length of the face of the rolls. It shall be readily accessible and shall operate whether pushed or pulled. The safety tripping devices shall be located within easy reach of the operator and no more than seventy-two inches above the level on which the operator stands.

(2) Safety trip, side.

On both sides of the calender and near each end of the face of the rolls, there shall be a cable or wire center cord connected to the safety trip. These lines shall be no more than twelve inches from the faces of the respective rolls and no less than two inches from the calender frame. They shall be anchored to the frame no more than six inches from the

floor or operator's platform and shall operate readily when pushed or pulled.

### The Granting of Rehearing

{¶ 38} Ohio Adm.Code 4121-3-20(E) provides for the filing of a motion for rehearing of a VSSR decision. Thereunder, Ohio Adm.Code 4121-3-20(E)(1) provides:

(a) In order to justify a rehearing of the staff hearing officer's order, the motion shall be accompanied by new and additional proof not previously considered and which by due diligence could not be obtained prior to the prehearing conference, or prior to the merit hearing if a record hearing was held and relevant to the specific safety requirement violation.

(b) A rehearing may also be indicated in exceptional cases where the order was based on an obvious mistake of fact or clear mistake of law.

{¶ 39} Claimant moved for rehearing based upon an alleged obvious mistake of fact or a clear mistake of law that he found in the SHO's order of May 14, 2013 that denied his VSSR application. In the May 14, 2013 order, the SHO found that relator had met the "exception" provision of Ohio Adm.Code 4123:1-5-11(D)(10)(b) by alleged compliance with the scope section of Ohio Adm.Code 4123:1-5-01(A), which states in part:

In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of the rules of this chapter to permit the use of other devices or methods when, in the opinion of the bureau, the equivalent protection is thereby secured.

{¶ 40} There was clearly a mistake of law in the May 14, 2013 SHO's order regarding the SHO's application of the scope section of Ohio Adm.Code 4123:1-5-01(A). As the SHO who granted rehearing appropriately found:

[T]he order does not address why the Industrial Commission can make such a finding without the BWC granting the exception first as discussed in the rule.

{¶ 41} While the SHO's order of September 21, 2013 appropriately explains why the SHO's order of May 14, 2013 contains a clear mistake of law, the SHO's order of June 30, 2014 perhaps explains it better:

> In this case, the Employer did not obtain a prior determination that it was entitled to an exception. As such, an exception has not been granted and therefore the Staff Hearing Officer finds that the Employer has not complied with the safety requirements of the applicable Code section 4123:1-5-11(D)(10)(A) [sic].

{¶ 42} Also, the SHO's order of September 21, 2013 appropriately quotes from claimant's brief in support of his motion for rehearing.

{¶ 43} Furthermore, the SHO's order of September 21, 2013 appropriately cites to this court's decision in *State ex rel. James W. Smith Lumber Co., Inc. v. Indus. Comm.,* 10th Dist. No. 81AP-178 (Sept. 15, 1981), for the proposition of that an exception from compliance with the safety code must be obtained prior to the industrial injury at issue.

{¶ 44} In short, the commission did not abuse its discretion in granting rehearing.

### The Granting of the VSSR Award

{¶ 45} As earlier noted, the second issue is whether the commission abused its discretion in finding an unexcepted violation of Ohio Adm.Code 4123:1-5-11(D)(10)(a) that was the cause of the industrial injury.

{¶ 46} *Hartco* is dispositive of relator's arguments here.

{¶ 47} John Runyon was injured when his right arm and hand were drawn into a reroll machine that was winding a sheet of rubberized material. The injury occurred in the course of and arising out of Runyon's employment with Hartco, Inc., Custom Coated Products ("Hartco"). Runyon filed a VSSR application alleging employer violations of former Chapters 4121:1-5 and 4121:1-13, which are now designated as Chapters 4123:1-5 and 4123:1-13 of the Ohio Administrative Code. Following a hearing, the commission found a violation of former Ohio Adm.Code 4121:1-5-11(D)(10)(a), which is now designated as Ohio Adm.Code 4123:1-5-11(D)(10)(a). The commission found that Runyon's injury resulted from Hartco's failure to guard the nip point created by material being wound over the surface of a roll. Hartco was denied rehearing. Hartco then filed a mandamus action in the Supreme Court of Ohio.

{¶ 48} The issue, as explained by the court, was Hartco's contention that former Ohio Adm.Code 4121:1-5-11(D)(10)(b) exempts it from the requirements of former Ohio Adm.Code 4121:1-5-11(D)(10)(a).

{¶ 49} As relator does here, *Hartco* contended that, because the machine in question was used in the rubber and plastics industry covered under former Ohio Adm.Code 4121:1-13, the (D)(10)(b) exception applies. The Supreme Court rejected *Hartco's* contention. The *Hartco* court relied upon the scope provision of former Ohio Adm.Code 4121:1-13-01(A), which stated "[t]hese specific requirements *supplement* those of Chapter 4121:1-5 of the Administrative Code." (Emphasis sic.) *Hartco* at 182. The court also pointed out that former Ohio Adm.Code 4121:1-5-01(A) states that former Chapter 4121:1-5's specific requirements "apply to *all* workshops and factories." (Emphasis sic.) *Hartco* at 182.

{¶ 50} Pointing out that former Ohio Adm.Code Chapter 4121:1-13 contains no nip point protection provision, the *Hartco* court held that former Ohio Adm.Code Chapter 4121:1-13 must be read as supplementing, not supplanting former Ohio Adm.Code 4121:1-5-11(D)(10)(a). The court pointed out that, to interpret the Ohio Administrative Code as *Hartco* suggested would effectively deprive rubber and plastic workers of nip point protection simply because of the nature of the employer's industry.

{¶ 51} The *Hartco* court emphasized that a safety cord does not prevent contact with nip points; it provides a way to stop the machine should body entanglement occur.

{¶ 52} Here, in its opening brief, relator fails to even mention the *Hartco* case. Relator made no effort to distinguish the case until its reply brief was filed. This is so even though the commission's order specifically relies on *Hartco.*

{¶ 53} In its reply brief, relator asserts that respondent's reliance on *Hartco* is misplaced. First, relator points out that the machine in *Hartco* was not a calender, but a reroll machine. However, relator neglects to mention that the *Hartco* court analyzed and interpreted the very same provisions of the Ohio Administrative Code at issue here. Given that scenario, it is difficult to see how it is significant that the *Hartco* case involved a reroll machine.

{¶ 54} In its reply brief, relator asserts:

> In this matter, because the machinery involved in Ashworth's injury is expressly covered by 4123:1-13-03, pursuant to 4123:1-5-11(D)(10)(b), the requirement of 4123: 1-5-11(D)(10)(a) does not apply. To conclude otherwise would be to completely disregard subsection (b). The basic tenets of statutory interpretation do not allow for such a result.

(Relator's Reply Brief, 4-5.)

{¶ 55} Notwithstanding relator's assertion, the *Hartco* court decided the issue that relator has raised here. Relator cannot prevail here without undoing the decision of the *Hartco* court.

{¶ 56} Based upon the foregoing analysis, the magistrate concludes that the commission did not abuse its discretion in granting a VSSR award.

{¶ 57} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).